IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Michael Reid, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>I.C. System Incorporated,<br><br>Defendant. | No. CV-12-02661-PHX-ROS<br><br>**ORDER** |

Plaintiff initiated this action in December of 2012 alleging violations of the Telephone Consumer Protection Act of 1990 ("TCPA"). (Doc. 1). Plaintiff claimed that beginning in October 2012, he received automated calls to his cell phone from Defendant I.C. System Inc. ("I.C. System") and that the calls persisted even after he contacted I.C. System and requested they stop. His complaint was brought individually and on behalf of a similarly situated class of plaintiffs who had experienced such non-emergent, automated calls from I.C. System without prior express consent.[1]

Before the Court is an unopposed motion for preliminary approval of a class action settlement. (Doc. 145). The motion is brought on behalf of a putative class of individuals who, beginning on December 4, 2008, "were called on a cellular telephone by

---

[1] Plaintiff subsequently amended his complaint to add another named plaintiff. (Docs. 38, 48). But the second named plaintiff ultimately dismissed his portion of the amended complaint with prejudice. (Docs. 103, 126).

I.C. System, using an automated dialer or prerecorded voice message whose telephone number was associated with a cellular telephone number in I.C. System's business records coded as a wrong number telephone call."[2] *Id.* The TCPA makes it unlawful for "any person within the United States . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice. . . to any telephone number assigned to a . . . cellular telephone service." 47 U.S. § 227(b)(1)(A)(iii).

## ANALYSIS

Where "the parties reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). Before granting preliminary approval of a settlement, the Court must determine whether the proposed class can be certified for settlement purposes. *See Manual for Complex Litigation* (4th Ed. 2004) § 21.632; *Amchem Prods. Inc. v. Windor*, 521 U.S. 591, 620 (1997).

**I. Preliminary Class Certification**

Rule 23 governs class certification, whether the proposed class is a litigated class or, as here, a settlement class. Under Rule 23, certification is appropriate where the proposed class and the proposed class representatives meet four prerequisites under Rule 23(a)[3] and one of the three categories of Rule 23(b).[4] When a court is evaluating the

---

[2] This language could define a class in which either 1) putative class members were called and, during the call, informed I.C. System the number used was wrong, or 2) putative class members were called *after* their numbers had been coded as wrong in I.C. System's records. The Court proceeds under the latter assumption, but encourages Plaintiff to clarify.

[3] Rule 23(a) requires 1) numerosity; 2) commonality; 3) typicality; and 4) adequacy of representation with respect to the putative class. Fed. R. Civ. P. 23(a).

[4] According to Rule 23(b), "[a] class action may be maintained if Rule 23(a) is satisfied and if:1) prosecuting separate actions would create a risk of inconsistent or dispositive adjudications; 2) the opposing party's actions have applied to the class generally such that final relief respecting the whole class is appropriate; or 3) questions of

- 2 -

certification question in the context of a proposed settlement class, questions regarding the manageability of the case for trial purposes are not considered. *See Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. R. Civ. P. 23(b)(3)(D), for the proposal is that there be no trial."). However, the Ninth Circuit has long held courts must be particularly careful when approving classes for settlement purposes. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) ("[W]e must pay 'undiluted, even heightened, attention' to class certification requirements in a settlement context.").

### A. Rule 23(a) Requirements

#### i. Numerosity

Rule 23(a)(1) requires the proposed class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a). There is no specific number that satisfies the numerosity requirement. But the Court is confident the 959,473 individuals I.C. System identifies as fitting the settlement class description satisfy this requirement. *See, e.g.*, *Staton*, 327 F.3d at 953 ("There is no dispute that the numerosity requirement is met in this case. The plaintiff class before us is approximately 15,000 in number."); *True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052, 1063 (C.D. Cal. 2010) ("Here, Plaintiffs' counsel estimates the proposed class consists of 176,990 persons nationwide. . . . This satisfies the numerosity requirement of Rule 23(a).").

#### ii. Commonality

Rule 23(a)(2) requires the presence of common question of law or fact. This "requires the plaintiff to demonstrate that the class members have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (citations and internal quotation marks omitted). But that injury cannot be too vague. Thus, the class members' claims "must depend upon a common [question] . . . that it is capable of

---

law or fact common to class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b).

classwide resolution." *Id.* That is, the "truth or falsity" of the common question "will resolve an issue that is central to the validity of each one of the claims in one stroke." "[C]ommon questions may center on shared legal issues with divergent factual predicates [or] a common core of salient facts coupled with disparate legal remedies." *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1165 (9th Cir. 2014) (citations and internal quotation marks omitted). And the requirement is met "when the common questions [] raised are apt to drive the resolution of the litigation, no matter their number." *Id.* (citations and internal quotation marks omitted).[5]

Plaintiff argues questions common to the proposed class include: 1) whether I.C. System knowingly and willfully, 2) used an automatic telephone dialing system or prerecorded voice, 3) to make calls to putative class members' cellular phones, 4) whether the numbers were coded as wrong numbers in I.C. System's database, and 5) whether I.C. System obtained prior express consent to make the calls. These are factual questions shared by all putative class members, which are central to their claims. The presence of individualized issues of consent does not defeat a finding of commonality, particularly where, as here, the defendant has made no showing that prior express consent was obtained from anyone. *See Meyer v. Portfolio Recovery Associates, LLC*, 707 F.3d 1036, 1042 (9th Cir. 2012). If answered affirmatively, these common questions would demonstrate class members experienced the same injury. Thus, Plaintiff's proposed class meets the commonality requirement of Rule 23(a)(2).

### iii. Typicality

Under Rule 23(a)(3), "the claims or defenses of the representative parties [must be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Representative claims are "typical" if they are "reasonably co-extensive with those of absent class members;" they "need not be substantially identical." *Hanlon*, 150 F.3d at 1020. The named plaintiffs must be members of the class they seek to represent and they

---

[5] In the Ninth Circuit in particular, this requirement is evaluated "permissively." *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).

- 4 -

must "possess the same interest and suffer the same injury" as putative class members. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982) (internal quotation marks omitted).

Plaintiff's claims arise from the same factual basis as those of the putative class members: Plaintiff alleges I.C. System made calls to his cellular phone using an automatic dialing system and/or with prerecorded messages without his consent and his telephone number was coded as a wrong number. He has experienced the same injury and represents the same interests as the other putative class members. Therefore, Plaintiff's claims are typical of those of the putative class members.

### iv. Adequacy of Representation

Finally, Rule 23(a)(4) requires the "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The adequacy-of-representation requirement tend[s] to merge with the commonality and typicality criteria of Rule 23(a)." *Amchem*, 521 U.S. at 626, n. 20 (citations and internal quotation marks omitted). In order to be adequate, a representative may not have any conflicts of interest with other class members, nor may the representative's counsel. *Hanlon*, 150 F.3d at 1020. The representative and his counsel must also show they will prosecute the action vigorously on behalf of the class. *Id.* This includes showing counsel is competent and, "in the context of a settlement-only class, . . . the rationale for not pursuing further litigation." *Id.* at 1021.

Plaintiff and his counsel attest they do not have any conflicts of interest with other class members.[6] At present, there is no reason to doubt this. Furthermore, each firm Plaintiff moves to admit has extensive experience in prosecuting class actions and TCPA cases in particular. Plaintiff and his counsel's reasons for pursuing settlement rather than further litigation and potentially trial, namely the risks and costs involved, are satisfactory.

---

[6] Plaintiff requests attorneys from three separate law firms be appointed class counsel. *See* Part III, *infra*.

- 5 -

In sum, Plaintiff's proposal meets the threshold requirements of numerosity, commonality, typicality, and adequacy of representation under Rule 23(a).

### B. Rule 23(b) Requirement

In addition to satisfying all four requirements of Rule 23(a), Plaintiff must show the putative class meets one of three threshold requirements under Rule 23(b). That is, Plaintiff must show either: 1) prosecuting separate actions would create a risk of inconsistent or dispositive adjudications; 2) the opposing party's actions have applied to the class generally such that final relief respecting the whole class is appropriate; or 3) questions of law or fact common to class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b).

Plaintiff argues this case qualifies for certification under Rule 23(b)(3).

### i. Predominance

The requirement of predominance under Rule 23(b)(3) is distinct from that of commonality under Rule 23(a)(2):

> In contrast to Rule 23(a)(2), Rule 23(b)(3) focuses on the relationship between the common and individual issues. 'When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis.'

*Hanlon*, 150 F.3d at 1022 (quoting 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 1778 (2d ed.1986)).

Plaintiff's claims present common questions of law and fact. I.C. System's alleged use of certain equipment and its knowledge and willfulness in doing so are questions common to all putative class members. These questions are more substantial than the more individualized inquiry of whether I.C. System obtained prior express consent from each putative class member. In addition, the prominence of consent is diminished by Plaintiff's limitation of the proposed class to persons whose cell phone numbers were coded as "wrong" in I.C. System's records. As such, common questions predominate

among members of Plaintiff's proposed class.

### ii. Superiority

To satisfy Rule 23(b)(3), Plaintiff must also prove class resolution of the case is "superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). "The superiority inquiry under Rule 23(b)(3) requires determination of whether the objectives of the particular class action procedure will be achieved in the particular case." *Hanlon*, 150 F.3d at 1023 (citing Wright, Miller & Kane, *supra* § 1779). "Where classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996).

As Plaintiff states, it is neither economically feasible nor judicially efficient for the nearly one million putative class members to separately pursue their almost identical claims. Thus, a class action is the superior form to resolve these claims.

## II. Preliminary Settlement Approval

Once a settlement class is preliminarily certified, the court decides whether to preliminarily approve the proposed settlement. Under Rule 23(e), a court must evaluate a proposed settlement for fundamental fairness, adequacy, and reasonableness before approving it. Fed. R. Civ. P. 23(e)(2). Ultimately, a determination of the fairness, adequacy, and reasonableness of a class action settlement involves consideration of:

> [T]he strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Staton*, 327 F.3d at 959 (citations and internal quotation marks omitted). However, at the preliminary approval stage, courts need only evaluate "whether the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no

obvious-deficiency, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval." *Horton v. USAA Cas. Ins. Co.*, 266 F.R.D. 360, 363 (D. Ariz. 2009) (citations and internal quotation marks omitted).[7]

### A. Serious, Informed, Non-Collusive Negotiations

Since 2013, the parties have exchanged numerous sets of discovery, significant portions of which were subject to dispute, and conducted several depositions.[8] On February 12, 2015 and again on March 27, 2015, they participated in mediation, which they claim led to the proposed settlement. *See Satchell v. Fed. Express Corp.*, No. C 03 2878 SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."). Both sides were represented by experienced counsel qualified to assess the strengths and weaknesses of their clients' positions and negotiate accordingly. Therefore, from the circumstances, the proposed settlement agreement appears to be the product of serious, informed, non-collusive negotiations.

### B. Obvious Deficiency, Preferential Treatment, and Range of Possible Approval

Under the proposed settlement, I.C. System would create an "all-inclusive" Settlement Fund of $3,000,000. (Doc. 145-3 at 5). The Settlement Fund would cover all administrative expenses and taxes pursuant to its creation, as well as "any incentive awards ordered by the Court to be paid to the Class Representatives, any attorneys' fees, costs or expenses ordered by the Court to be paid to Class Counsel, and all amounts to be paid to Settlement Class Members" under the settlement. *Id.* The agreement also states the parties plan to hire a third-party claims administrator to facilitate notice and manage class members' claims and who will also be paid out of the $3,000,000 all-inclusive,

---

[7] The Ninth Circuit "put[s] a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009).

[8] Although discovery began in Fall of 2013, the majority of it occurred in Fall of 2014.

- 8 -

lump sum payment by I.C. System.

The settlement provides I.C. System will not object to a request by Class Counsel for fees of 25% or less of the settlement amount ($750,000) and costs of $100,000 or less. *Id.* at 8. In addition, it provides Plaintiff (the "Class Representative") will receive up to $5,000 of incentive pay. Under the agreement all other approved class members who make a claim, will receive a pro-rated share of the remaining funds. The agreement provides for notice by direct mail, publication, press release, website, and toll-free telephone number. *Id.* at 14.

I.C. System estimates the size of the class is 959,473. Deducting the proposed attorneys' fees, costs, and incentive fee for the named Plaintiff leaves $2,145,000 for the remaining 959,472 class members. That would be approximately $2.23 per class member. But, in reality, the amount per member would be even less, as the $3,000,000 lump sum is also meant to cover the costs of the third-party claims administrator charged with providing notice to class members and processing their claims. Plaintiff does not produce an estimated cost for the third-party claims administration, but such costs for a class this size could amount to hundreds of thousands of dollars.[9] Furthermore, if more than 100 class members opt out of the settlement, I.C. System has the option of voiding the agreement. *Id.* at 17. Thus, it is conceivable the 959,472 number would not be significantly reduced by individuals opting-out. Plaintiff has not stated how many class members it anticipates will file a claim or any evidence of the average rate at which class members have made claims in similar TCPA class actions. Because of this deficiency, the amount each class member might actually receive is vague.

The TCPA provides private plaintiffs may recover $500 of statutory damages for *each* violation and treble damages, or $1,500 per violation, if the plaintiff can prove the defendant committed it willfully or knowingly. 47 U.S.C. § 227(b)(3). Despite the parties' apparent good faith negotiations, the Court cannot now find the proposed

---

[9] In *Couser v. Apria Healthcare, Inc.*, the estimated cost for third-party administration similar to that proposed here was $55,000 for a class of 110,000. SACV13-35 JVS (RNBx) (C.D. Cal. October 27, 2014).

settlement falls within the range of possible approval. Leaving class members with the potential only for scant (approximately $2) recovery for their claims, particularly where counsel and named Plaintiff stand to gain significantly, is not fundamentally fair and as such constitutes an obvious deficiency.

The examples Plaintiff provides of recent TCPA class settlements are not comparable and are distinguishable. In *Couser v. Apria Healthcare, Inc.*, the preliminary settlement providing a minimum amount of $400,000 and maximum amount of $750,000 was approved. SACV13-35 JVS (RNBx) (C.D. Cal. October 27, 2014). But the size of the class at the time of approval was unknown. At the final approval stage, the parties estimated the size of the class as 110,000, which would allow for approximately $6.82 of recovery per class member. Counsel's fees and costs, as well as the named plaintiff's incentive pay were to be paid separately from the settlement fund. In *Ritchie v. Van Ru Credit Corporation, et al.*, a settlement of $2.3 million was approved for a class of only 9,042. 12-cv-1714-PHX-(SMM) (D. AZ August 13, 2014). Although attorneys' and incentive fees and other costs were to be paid out of the settlement fund, the parties still estimated each class member would receive at least $167, and more if fewer than the 9,042 of those eligible submitted claims. Finally, in *Hanley v. Fifth Third Bank*, the court approved a settlement of $4.5 million. 12-cv-1612 (N.D. Ill. December 23, 2013). There, the class size was estimated at 200,000. Although attorneys' and incentive fees were substantial and were paid out of the settlement fund, the fund provided at least $13.38 per class member, after all fees and costs were paid. Recently, in the Southern District of New York, an individual plaintiff represented by one of Plaintiff's attorneys, Sergei Lemberg, recovered $229,500 for 163 calls, 153 of which the court found qualified for treble damages. *King v. Time Warner Cable*, 1:14-cv-02018-AKH (S.D.N.Y. July 7, 2015).

The best case for Plaintiff is *Malta v. Fed. Home Loan Mortgage Corporation*. There the court granted preliminary approval to a settlement that had the potential to provide only $2 to each class member. No. 10-CV-1290 BEN NLS, 2013 WL 444619 (S.D. Cal. Feb. 5, 2013). But part of the court's decision approving the settlement was the

additional benefit class members would receive from the defendant's "new procedures to ensure future compliance with the TCPA." *Id.* at *7. The court also calculated that, if only one to five percent of class members made claims, recovery would be between $42.76 and $213.80 each.

The dollar amount per class member Plaintiff proposes is similar to that in *Malta*. And the parties may be able to establish this case is closer to *Malta* than *Ritchie* such that a very low recovery per class member is appropriate. Then, the Court might overlook the very meager recovery now contemplated if all or most class members made claims. Concomitantly, Plaintiff has not shown, or attempted to show, that I.C. System is making or has made any changes to its business operation to better comply with the TCPA and avoid potential future violations. Finally, Plaintiff has also not shown recovery will be more significant by producing a reliable estimate of the number of class members who would likely submit claims.

The purpose of the TCPA is to end the type of inconvenient and harassing phone calls of which Plaintiff complains on behalf of the proposed class. Without proof or at least evidence of a good faith effort to either compensate victims for their purported injury or relieve them from the threat of similar conduct in the future, and preferably both, the settlement is inadequate in providing persons on whose behalf it was supposedly created a remedy for possible injury. Therefore, the Court will not grant preliminary approval of the proposed settlement.

**III. Appointment of Class Counsel**

Rule 23(g) governs the appointment of class counsel. In appointing class counsel, a court must consider: 1) "the work counsel has done"; 2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action"; 3) "counsel's knowledge of the applicable law"; and 4) "the resources []counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). The court may also consider anything else "pertinent to counsel's ability to fairly and adequately represent the interests of the class" and "may order potential class counsel to provide information on any subject pertinent to the appointment and to propose terms for attorney's fees and

nontaxable costs." Fed. R. Civ. P. 23(g)(1)(B)-(C). Rule 23(g) also instructs, "[i]f more than one adequate applicant seeks appointment, the court must appoint the applicant best able to represent the interests of the class." Fed. R. Civ. P. 23(g)(2).

Plaintiff seeks the appointment of three different law firms as class counsel. Despite the strictures of Rule 23(g), courts routinely appoint more than one law firm to the position of class counsel. *See, e.g.*, *Malta v. Fed. Home Loan Mortgage Corp.*, No. 10-CV-1290 BEN NLS, 2013 WL 444619, at *9 (S.D. Cal. Feb. 5, 2013) (appointing three law firms class counsel in TCPA class action). Given the size of the proposed class, it is not unreasonable to appoint multiple counsel in this case. However, none of counsel's declarations provide a description of the services and resources devoted to representing the class under Rule 23(g)(1)(A)(iv). And counsels' descriptions of the work performed under Rule 23(g)(1)(A)(i) are generic and do not provide a clear sense of what has actually been accomplished by each law firm or attorney. Without this information, which the federal rules mandate the Court consider, the requested appointments must be denied.

Accordingly,

**IT IS ORDERED** the motion for preliminary approval of class action settlement, (Doc. 145), is **DENIED.**

**IT IS FURTHER ORDERED** Plaintiff shall have until July 23, 2015 to submit a revised motion for preliminary class certification and approval of class action settlement or notify the Court of his intention to litigate the case.

Dated this 9th day of July, 2015.

Honorable Roslyn O. Silver
Senior United States District Judge

- 12 -