John L. Condrey (AZ SBN 026220)
Molly C. Machold (AZ SBN 026301)
jcondrey@gordonrees.com
mmachold@gordonrees.com
**GORDON & REES, LLP**
111 W. Monroe Street, Suite 1600
Phoenix, Arizona 85003
Telephone:  (602) 794-2490
Facsimile:   (602) 265-4716

Sean P. Flynn (CA SBN 220184)
sflynn@gordonrees.com
**GORDON & REES, LLP**
2211 Michelson Drive, Suite 400
Irvine, California 92612
Telephone:  (949) 255-6950
Facsimile:   (949) 474-2060

Attorneys for Defendant
**I.C. SYSTEM, INC.**

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| MICHAEL REID, *on behalf of himself and all others similarly situated*, <br><br> Plaintiff, <br><br> vs. <br><br> I.C. SYSTEM, INC., a Minnesota corporation, <br><br> Defendant. | Case No: 2:12-cv-02661-ROS <br><br> **JOINDER IN MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT** <br><br> (Assigned to the Honorable Roslyn O. Silver) |

**I.    INTRODUCTION.**

As set forth in Plaintiff's motion for preliminary approval of the class settlement of this action, I.C. System, Inc. ("ICS") does not oppose the motion. However, ICS writes separately to express its separate view as to why the motion should be granted.

Class action defense is very expensive and the prospect of losing a class action with a million members raises the specter of ruinous liability. ICS believes the class action brought by plaintiff is extremely weak: the class definition is inconsistent with the

requirements of the Telephone Consumer Protection Act of 1991, 47 U. S.C. § 227; the information to identify the class—wrong telephone numbers only—is insufficient to identify any reasonable number of potential class members; all or some large portion of the prospective class would be found not to meet Article III standing requirement of a "case or controversy" as addressed in United States Supreme Court jurisprudence, including *Spokeo v. Robins*, 578 U.S. \_\_\_, 136 S. Ct. 1540 (2016) and its progeny, and; additional requirements of Rule 23 would be found not to exist.

The cost necessary for ICS to establish the issues set forth above could exceed the amount of the contemplated settlement and the bare prospect of facing liability in the hundreds of millions of dollars makes it risky to continue the litigation to conclusion even if the plaintiff's chances for success at the end of the day are very low. The weakness of the class and its vulnerability to dismissal supports that the amount of the settlement is reasonable.

**II.     RELEVANT ADDITIONAL BACKGROUND.**

Plaintiff's current class definition is:

> All persons within the Class Period who were called on a cellular telephone by I.C. System, using an Automatic Telephone Dialing System, with or without a prerecorded or artificial voice message, whose cellular telephone number was associated with a cellular telephone number in I.C. System's business records coded as a wrong number telephone call, regardless if there was a call before or after the wrong number code was entered in I.C. System's business records.

While plaintiff has not identified how it will identify and notify the class participants in detail, the class definition shows that the *only* information that exists with respect to the class is the "wrong number." Even assuming the "wrong numbers" are identified with individuals, the question would remain whether a person was the owner of

the phone number at the time the "wrong number" call was coded, or whether the phone number had been recycled.[1]  Accurately identifying members of the purported class is virtually impossible.  Even plaintiff's motion for preliminary approval seems to acknowledge that valid class participation will be between one and three percent.

In addition to this problem, ICS explained at length in opposition to Plaintiff's various Certification Motions why it did not believe the class met the requirements for certification. (See, for example, Document 180, filed 9/28/15.)  This included an explanation that ICS' telephone dialing equipment is not covered by the TCPA at all because it does not have a "random or sequential number generator" (See Doc. 180, pgs. 2-4.) Under the TCPA, "automatic telephone dialing system" means:

> Equipment which has the capacity-
>    (A) To store or produce telephone numbers to be called, or random
>        or sequential number generator; and (B) to dial such numbers.
>        47 U.S.C. §227(a)(1)

While ICS believes its then-current systems did not constitute an ATDS and there is no supported evidence to the contrary, since the litigation was filed ICS identified a phone system that a court has determined does not constitute an ATDS, and ICS switched to the same system.  See, *Strauss v. The CBE Group, Inc.*, Case 0:15-cv-62026-JIC Document 113 Entered on FLSD Docket 03/28/2016 (USDC Dist. of FLA, 2016.)  The system is described in the opinion at page 2, and the court's evaluation whether the system constitutes an ATDS is found at pages 5 and 8-9.  The court found that it did not. ICS now uses the same systems exclusively—but according to plaintiff's class definition, continuing "wrong numbers" coded by ICS on this system is also part of the class.

Finally, plaintiff's class definition ignores completely the "safe harbor rule" of the July 10, 2015 FCC Opinion, 2015 FCC LEXIS 1586, at 143:

---

[1] The potential that persons identified with a "wrong number" could be called on that number to determine whether they want to participate in a class action involving unwanted calls is an unintended irony—if the administrator used an automatic dialer of any kind, it could constitute a violation of the TCPA, according to plaintiff's arguments in this case.

2

> We find that, where a caller believes he has consent to make a call and does not discover that a wireless number has been reassigned prior to making or initiating a call to that number for the first time after reassignment, liability should not attach for the first call.

## III. DISCUSSION.

ICS believes that this class action fails to meet the requirements for a class action in federal court on almost all points. ICS agrees that the requirements of "numerosity" are met, but only because the class definition captures every single telephone number that ICS logs as a wrong number, and that definition is overbroad. ICS believes Rule 23 requirements are not met, and also believes that the Article III standing requirements for a "case or controversy" are absent. However, the potential for ruinous damages and the cost of litigation make settlement the best option for ICS—and a very good deal for plaintiff and the proposed class.

### A. Standing

*Spokeo v. Robins,* 578 U.S. ___, 136 S. Ct. 1540 (2016) casts into doubt whether plaintiff's class action meets the requirements for standing under Article III of the Constitution.

Article III of the Constitution limits federal judicial power to adjudication of "cases" or "controversies." U.S. Const. art. III, § 2. The plaintiff must have suffered an "injury-in-fact," which is an invasion of a legally protected interest that is "concrete and particularized" and "actual or imminent" to have standing to sue in federal court. *Lujan v. Defs. of Wildlife,* 504 U.S. 555, 560 (1992). The plaintiff bears the burden of establishing standing to sue. *Spokeo,* at 1547 (2016).

Plaintiff must show that he—and all class members suffered an invasion of a legally protected interest that is both particularized and concrete, which means, respectively, an injury that affects the plaintiff in a personal and individual way and, and is an injury that actually exists . *Spokeo*, 136 S. Ct. at 1548. It is true that Congress may

"create a statutory right or entitlement the alleged deprivation of which can confer standing to sue even where the plaintiff would have suffered no judicially cognizable injury in the absence of statute" *Warth v. Seldin*, 422 U.S. 490, 514 (1975). However, "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right. Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo*, 136 S. Ct. at 1549. A plaintiff cannot "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Id*. See also, *Summers v. Earth Island Inst.*, 555 U.S. 488, 497 (2009) (injury in fact requirements "a hard floor of Article III jurisdiction that cannot be removed by statute"); *Sierra Club v. Morton,* 405 U.S. 727, 738 (1972) ("[Statutorily] broadening the categories of injury that may be alleged in support of standing is a different matter from abandoning the requirement that the party seeking review must himself have suffered an injury").

Plaintiff's complaint makes no allegations of an injury in fact. (See, Doc 49.) It seems improbable that plaintiff could ever allege facts supporting that the individual class members suffered an injury in fact as defined by Supreme Court jurisprudence.

Additionally, plaintiff fails to support how the proposed class is actually harmed, particularly given the class definition which includes every "wrong number" coded by ICS, even if it was the only call ever made.

In *Sartin v. EKF Diagnostics, Inc.,* No. 16-1816, 2016 U.S. Dist. LEXIS 86777, at *10 (E.D. La. July 5, 2016) the District Court dismissed a TCPA "junk fax" case for this very reason. The Court exhaustively evaluated the requirement for actual damages and compared them to the allegations of damages in the complaint:

> Dr. Sartin's complaint exhaustively describes the requirements of the TCPA, as well as the nature of defendants' alleged "junk fax campaign." But the complaint's only reference to any kind of injury appears in a single sentence, which states that defendants' failure to comply with the TCPA's

requirements "caus[ed] Plaintiff and Plaintiff Class to sustain statutory damages, in addition to actual damages, including but not limited to those contemplated by Congress and the [Federal Communications Commission]."

The Court concluded that this was insufficient, and dismissed the complaint because it failed to "The well-pleaded factual allegations in the complaint establish nothing more than a bare violation of the TCPA, divorced from any concrete harm[.]"

ICS does not seek dismissal of the complaint here, but believes the potential that the complaint fails to allege sufficient actual damage supports settlement in the amount and on the terms agreed to by counsel for plaintiff and ICS. This reasoning was approved in *Rinky Dink, Inc. v. World Bus. Lenders, LLC*, No. C14-0268-JCC, 2016 U.S. Dist. LEXIS 70858, at *7 (W.D. Wash. May 31, 2016). There, the Court gave final approval to a class settlement involving the TCPA and state law claims related to automated prerecorded telemarketing calls. It evaluated whether the settlement was fundamentally fair and included in its evaluation the strength of plaintiff's case:

> Plaintiffs set forth sufficient, specific reasons that settlement is wise in light of the risk of losing on the merits. (Dkt. No. 88 at 10.) For example, Plaintiffs direct the Court to *Smith v. Microsoft*, 2014 WL 323683 (C.D. Cal. Jan. 28, 2014) in which a district court in the Ninth Circuit declined to certify a TCPA class because class members could not be identified clearly based on records similar to those held by WBL. (Id.) While the Smith case is not binding on this Court, it acknowledges a factual weakness in Plaintiffs' case: that WBL's records were limited to phone numbers, not names. (Id.) And, as Plaintiffs point out, a recent U.S. Supreme Court case may raise issues about the nature of Plaintiffs' injuries. (Id.) (citing *Spokeo, Inc. v. Robbins*).

The *Rinky Dink* Court approved the final settlement. ICS requests that this Court grant the motion by plaintiff for preliminary approval of the settlement here.

B.   Rule 23 Requirements

ICS believes that after *Spokeo* it is even more unlikely that plaintiff can meet the requirements of Rule 23.  ICS questions whether there are common questions of law or fact or typicality of claims or defenses required by Rule 23(a).  *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. ___, 131 S. Ct. 2542, 2551-52 (2011) (certification proper only if trial court satisfied after "rigorous analysis" that prerequisites of Rule 23(a) satisfied).

ICS also believes that plaintiff cannot show that class action treatment is proper under Rule 23(b). Plaintiff has claimed that certification is proper under Rule 23(b)(3), which encompasses cases "in which a class action would achieve economies of time, effort, and expense, and promote… uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable result*s*." *Amchem Prods. v. Windsor*, 521 U.S. 591, 615 (1997) (quoting Rule 23(b)(3) Advisory Committee note to 1966 amendment).  ICS questions whether plaintiff can support "[1] that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and [2] that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Rule 23(b)(3). Rule 23(b)(3) adds requirements not imposed on other class actions because these suits involve situations where "class-action treatment is not as clearly called for." *Gunnells v. Healthplan Servs*., 348 F.3d 417, 424 (4th Cir. 2003).

ICS will address "commonality" required by Rule 23(a) and "predominance" required by Rule 23(b)(3) together because they are similar but the predominance requirement is "far more demanding than Rule 23(a)'s commonality requirement," *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1005 (11th Cir. 1997). ICS believes the class meets neither requirement.

The only common factual and legal issue as identified by plaintiff's proposed class definition is that individuals received telephone calls that were coded by ICS as a "wrong number," which plaintiff alleges constitutes a violation of the TCPA. Plaintiff's burden "is not merely to show that some common issues exist, but…to place substantial evidence

6

in the record that common issues *predominate*." *Lockheed Martin Corp. v. Sup. Ct*, 29 Cal. 4th 1096, 1108 (2003). "Class actions will not be permitted … where there are diverse factual issues to be resolved, even though there are many common questions of law…. [A] class action cannot be maintained where each member's right to recover depends on facts peculiar to his [or her] case." *Basurco v. 21st Century Ins. Co.*, 108 Cal. App. 4th 110, 118 (2003). Here, ICS believes each member of the proposed class would be required to litigate numerous substantial individual questions, including whether the number coded by ICS was in fact a "wrong number," how many calls were received at each number which was coded as a "wrong number," whether there was in fact consent, and whether the individual class member suffered an "injury in fact." This supports that common issues do not predominate—in fact the common issues are almost nonexistent. *Spokeo* may require that each class member demonstrate a concrete harm, which would make class action treatment inappropriate. These issues are not yet fully settled, and support approval of the settlement.

ICS does not believe this form of litigation is superior to other options, another requirement of Rule 23(b). Plaintiff seeks potentially hundreds of millions of dollars in statutory damages from ICS, and there is not even an *allegation* that anybody experienced an actual injury of any kind. Courts addressing potentially awarding massive statutory damages where little or no injury occurred have denied class certification. *See Kline v. Coldwell Banker & Co.*, 508 F.2d 226 (9th Cir. 1974) (class treatment lacks superiority when damages "shock the conscience"); *Wilcox v. Commerce Bank of Kansas City*, 474 F.2d 336, 341-47 (10th Cir. 1973) (district court did not abuse discretion when it denied class certification for TILA violations where class members were not harmed and statutory damages would be extremely large); *Hills v. Equifax Consumer Servs.*, 237 F.R.D. 491, 504-505 (N.D. Ga. 2006); *Legge v. Nextel Comm., Inc.*, 2004 U.S. Dist. LEXIS 30333, *42-57 (C.D. Cal. June 28, 2004); *In re Trans Union Corp. Privacy Litig.*, 211 F.R.D. 328, 350-51 (N.D. Ill. 2002) (class action lacked superiority in part because of due process concerns where statutory damages would be

"grossly disproportionate" to any actual damage suffered by plaintiffs).

The combination of ruinous potential liability and the lack of any supportable real injury—and no allegation of one, supports that the class should never be certified. However the presence of the bare potential for massive liability coupled with the likelihood of expensive and protracted litigation if the case does not settle leads ICS to the conclusion that it should settle the case.

## III.  CONCLUSION

ICS submits that the settlement which has been agreed to between the parties is fair to the prospective settlement class, and for that reason it requests that the Court grant the application for preliminary approval of the settlement.

Dated:  August 30, 2016         **GORDON & REES, LLP**

By:  *s/John L. Condrey*
John L. Condrey
Molly C. Machold
Attorneys for Defendant
I.C. System, Inc.

I hereby certify that on August 30, 2016, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Trinette G. Kent
Lemberg & Associates, LLC
11811 North Tatum Boulevard, Suite 3031
Phoenix, Arizona 85028
tkent@lemberglaw.com

Sergei Lemberg
Stephen Taylor
Lemberg & Associates LLC
1100 Summer Street 3rd Floor
Stamford, CT 06905
Slemberg@lemberglaw.com
Staylor@lemberglaw.com

David James McGlothlin
Hyde & Swigart
2633 E Indian School Rd., Ste. 460
Phoenix, AZ 85016
david@westcoastlitigation.com

Matthew Loker
Abbas Kazerounian
Kazerouni Law Group, APC
245 Fischer Avenue, Unit D-1
Costa Mesa, CA 92626
ml@kazlg.com
ak@kazlg.com

Joshua B. Swigart
Hyde & Swigart - San Diego, CA
411 Camino Del Rio S, Ste. 301
San Diego, CA 92108
josh@westcoastlitigation.com


s/Kimberley M. Davison