1
2
3
4
5
6

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Michael Reid, et al., | No. CV-12-02661-PHX-ROS |
| Plaintiffs, | **ORDER** |
| v. | |
| I.C. System Incorporated, | |
| Defendant. | |

Settlement class representative Michael Reid ("Plaintiff") alleges Defendant I.C. System Incorporated ("Defendant") contacted Plaintiff and others in a manner that violated the Telephone Consumer Protection Act of 1990 ("TCPA"). Plaintiff moved for final approval of the parties' settlement requiring Defendant to pay over $3 million to resolve all claims against it during the class period, (Doc. 239), which Defendant opposed, (Doc. 241). Plaintiff's counsel also moved for an award of attorney fees, (Doc. 231), which Defendant did not oppose. The Court held a final approval hearing on July 18, 2018, during which the Court heard Defendant's counsel's arguments. For the reasons stated on the record during the final approval hearing and set forth below, the Court concluded Defendant's efforts to terminate the settlement agreement were meritless, approved the settlement agreement, and granted attorney's fees.

## FINAL APPROVAL

"[S]ettlements in class actions 'present unique due process concerns for absent class members,' including the risk that class counsel 'may collude with the defendants.'"

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 944 (9th Cir. 2015) (citation omitted).   "To guard against these dangers, Federal Rule of Civil Procedure 23(e) 'requires court approval of all class action settlements, which may be granted only after a fairness hearing and a determination that the settlement taken as a whole is fair, reasonable, and adequate.'"   *Id.* (citation omitted).   The factors considered when assessing a settlement's fairness are: "(1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and view of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement."   *Id.* (citation omitted); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 2011); *In re Lifelock, Inc. Mktg. & Sales Practices Litig.*, No. MDL 08-1977-MHM, 2010 WL 3715138, at *4 (D. Ariz. Aug. 31, 2010) (citations omitted).   In addition, because this settlement was reached before formal class certification, the Court must "also explore whether the settlement is a product of collusion among the negotiating parties."   *Ellison v. Steven Madden, Ltd.*, No. CV115935PSGAGRX, 2013 WL 12124432, at *3 (C.D. Cal. May 7, 2013) (citing *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011)).

The first factor is the strength of the Plaintiff's case.   "Every class action involves a degree of uncertainty on the merits," and therefore "the strength of the plaintiff's case on the merits [must be assessed] in comparison to the amount offered in the settlement."   *In re Lifelock*, 2010 WL 3715138, at *4 (citations omitted).   Here, the parties identified multiple hurdles that might hinder Plaintiff's ability to succeed on the merits.   (Doc. 239-1 at 10-11).   These include "issues relating to arbitration, prior express consent," and whether Defendant's telephone equipment is subject to the TCPA.   (Doc. 239-1 at 10-11).   In addition, the parties agree that the strength of Plaintiff's case has lessened since the settlement was initially reached, in part because a recent decision by the D.C. Circuit has undermined Plaintiff's case, and because a case pending before the Ninth Circuit may do

further damage.  (Doc. 245 at 5).  While Plaintiff maintains it would have overcome these hurdles, it appears that approving this settlement will be a good result for class members.  *See Ellison*, 2013 WL 12124432, at *3; *In re Lifelock*, 2010 WL 3715138, at *4.  Thus, this factor suggests the settlement is fair, reasonable, and adequate.

The next factors are the risk, expense, complexity, and likely duration of further litigation, as well as the risk of maintaining class action status throughout the trial.  It is generally understood that, "unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results."  *Nat'l Rural Telecomms. Coop v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004).  Here, this action commenced in 2012.  Since then, the parties have engaged in hotly contested litigation and, if this settlement were to be rejected, further contentious litigation would likely follow.  The parties would be required to resubmit briefing regarding class certification, incorporating any recent developments in the case and the law.  Maintaining class action status at that stage could be risky, particularly because, as noted above, recent judicial decisions may have undermined the strength of Plaintiff's case.  And even if Plaintiff succeeded in maintaining class action status, the case would then proceed to a costly trial, likely followed by an appeal.  On the other hand, a settlement now provides immediate compensation to class members who have submitted claims.  Thus, these factors weigh in favor of the settlement being fair, reasonable, and adequate.  *See, e.g.*, *Nat'l Rural Telecommunications Coop.*, 221 F.R.D. at 527 (concluding that "[a]voiding such a trial and the subsequent appeals in this complex case strongly militates in favor of settlement rather than further protracted and uncertain litigation").

The next factor is the amount offered in settlement.  On this point, the Court considers "the complete package taken as a whole, rather than the individual component parts," which means that "a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to class members at trial."  *Nat'l Rural Telecommunications Coop.*, 221 F.R.D. at 527.  Here, the $3.35 million settlement fund agreed-upon by the parties is substantial, and was

calculated to ensure payment to class members would be similar to that in other TCPA cases.  (Docs. 215-1; 218).  This settlement will provide $685.76 to 93 class members (the "single recovery claimants"), and $1,371.53 to the 1,715 class members who are entitled to a double recovery ("double recovery claimants").[1]  These amounts exceed amounts awarded to claimants in similar actions.  (Doc. 239).  Indeed, at this stage, the class members who submitted valid claims are likely anticipating payment in accordance with the information provided in the notice.  Thus, this factor also weighs in favor of the settlement being fair, reasonable, and adequate.

The next consideration is the extent of discovery completed and the stage of the proceedings.  "A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair."  *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 489 (E.D. Cal. 2010) (citation omitted).  Here, the parties reached this settlement after completing discovery, submitting discovery disputes, completing briefing on an opposed class certification motion, participating in arms-length settlement negotiations before Magistrate Judge Deborah M. Fine, and spending over two-months resolving the parties' remaining issues.  This means that, when the settlement was reached, the litigation had "progressed sufficiently to enable the Parties and counsel to assess the risks of proceeding as opposed to settlement."  *In re Lifelock*, 2010 WL 3715138, at *5 (citation omitted); *see also Ellison v*, 2013 WL 12124432, at *6.  This factor favors final approval.

Counsel's experience also weighs in favor of settlement approval.  "Parties

---

[1] Defendant, in another effort to terminate the settlement agreement, argues this two-tiered compensation structure leads to "distorted financial results," since single recovery claimants receive more than the statutory maximum recovery, whereas double recovery claimants receive less.  But Defendant agreed to this two-tiered recovery, which ensures class members with stronger claims receive a double distribution.  (Doc. 215).  And before Defendant's embarked on its recent campaign to terminate the settlement, Defendant had never previously objected to this two-tiered recovery structure, nor argued that class members' recovery must be indexed to the statutory maximums.  As explained in the Court's prior order, (Doc. 255), and at the final approval hearing, Defendant's efforts to terminate the settlement are meritless.  As set forth here, the settlement is fair, reasonable, and adequate, and for those reasons, was approved.

represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." *Lane v. Brown*, 116 F. Supp. 3d 1180, 1190 (D. Or. 2016) (citation omitted). Thus, counsel's recommendations are "given a presumption of reasonableness." *Id.* (citation omitted). Here, Plaintiff's counsel has been designated as class counsel in various consumer class actions throughout the country. (Docs. 215-2; 145-10; 145-11; 145-2; 145-12; 145-13). Indeed, this Court previously appointed Plaintiff's counsel as class counsel in this matter only after concluding they had sufficient experience with the TCPA and similar consumer protection statutes. (Doc. 218). Thus, this factor also weighs in favor of the settlement being fair, reasonable, and adequate. *See Ellison*, WL 12124432, at *6.

The next factor is the presence of a governmental participant. Here, the parties agree no governmental entity has participated in this action, meaning this factor is inapplicable to the Court's analysis. *See Ellison*, 2013 WL 12124432, at *7; *Nat'l Rural Telecommunications Coop.*, 221 F.R.D. at 528.

The final consideration is the class members' reaction to the proposed settlement. "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecommunications Coop.*, 221 F.R.D. at 529. Here, nearly two million consumers received notice of this class action, and notice was estimated to reach at least 70% of the class. (Doc. 239-3). And yet, no objections were lodged, and only five class members officially opted-out of the settlement. Further, the Court held a final approval hearing on July 18, 2018, and no objectors appeared. The lack of objections and minimal number of class members who opted-out strongly weighs in favor of the settlement being fair, reasonable, and adequate. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000), as amended (June 19, 2000); *Ellison*, 2013 WL 12124432, at *7; *Nat'l Rural Telecommunications Coop.*, 221 F.R.D. at 529.[2]

_____

[2] In another effort to terminate the settlement agreement, Defendant argues that the response rate is "remarkably miniscule," and that this shows the notice to class members was inadequate. However, the parties jointly submitted a proposed form of notice and

The final consideration is whether the settlement is the product of collusion.  "The Ninth Circuit puts 'a good deal of stock in the product of arms-length, non-collusive, negotiate resolution . . .'" *Ellison*, 2013 WL 12124432, at *7 (C.D. Cal. May 7, 2013) (citing *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009)).  "Factors indicative of collusion include '(1) when counsel receives a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded; (2) when the parties negotiate a clear sailing arrangement providing for the payment of attorneys' fees separate and apart from class funds; . . . and (3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund.'" *Id.* (citing *In re Bluetooth*, 654 F.3d at 947).

As discussed above, this settlement was the product of non-collusive, arms-length negotiations conducted before Magistrate Judge Deborah M. Fine, followed by an over two-month period dedicated to resolving the parties' remaining issues.  (Docs. 210; 215).  In addition, as explained in greater detail in the attorney's fees section below, the fee distribution does not suggest the settlement agreement was collusive.  This is not a situation where class members receive nothing while class counsel receives a large

---

notice plan.  The notice plan called for the publication of banner ads on targeted websites, the issuance of a press release, the establishment of a website and toll-free number, and the sending of targeted emails to potential class members' email addresses identified through a "reverse lookup" of telephone numbers belonging to suspected class members.  The parties represented that this notice plan was the best option practicable given that Defendant did not collect or maintain information sufficient to identify all class members, (Doc. 249 at 7-8), and the notice plan was estimated to reach 70% of the class, (Doc. 239-3).  Most importantly, prior to Defendant's recent efforts to terminate the settlement agreement, (Doc. 255), Defendant never previously objected to this notice plan, or argued that it was inadequate.  And although the response rate is low, the Court also recognizes that Defendant is a debt collection company, meaning class members may have chosen not to provide their personal contact information, and therefore not to participate in this settlement, for a variety of reasons unrelated to compensation or to the adequacy of notice.  *See e.g.*, *Pollard v. Remington Arms Co., LLC*, 320 F.R.D. 198, 214 (W.D. Mo. 2017) (approving settlement agreement, despite a low claims rate, and noting that, although class members' decision not to participate in the settlement could stem from class members' fear of providing firearm ownership information to lawyers and the government, the Court's role was not to question the class members' decisions).

payout, or a situation where class counsel receives a disproportionate distribution of the settlement funds.   In fact, the $3.35 million settlement fund for class members is unaffected by the attorney's fees award, as this is calculated separately based upon a percentage of the settlement's total value.   And although the settlement agreement does include a "clear sailing" provision (such that Defendant agrees not to contest the amount of attorney's fees so long as it falls within a negotiated ceiling of $725,000), the Court has, in the attorney's fees section below, scrutinized the relationship between the attorney's fees requested and the benefits to the class, and concluded the fees are warranted and not the product of collusion.  *See Ellison*, 2013 WL 12124432, at *8.

For these reasons, as well as those stated on the record during the July 18, 2018 final approval hearing, the Court concluded the settlement was fair, reasonable, and adequate.  The settlement was, therefore, approved.

## ATTORNEY'S FEES

Plaintiff also moved for an award of $725,000 in attorney fees and $59,627 in costs, which Defendant did not oppose.  "In class action litigation, awards of attorneys' fees serve the dual purpose of encouraging persons to seek redress for damages caused to an entire class of persons and discouraging future misconduct."  *In re Lifelock*, 2010 WL 3715138, at *8 (citation omitted).   Two common methods are used in calculating attorney's fees in common fund cases: (1) the lodestar method and (2) the percentage-of-the-fund method.  *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) (citation omitted).   Here, Plaintiff's counsel seeks attorney's fees pursuant to a percentage-of-the-fund method.

When attorney's fees are calculated based upon the "percentage-of-the-fund" method, the "benchmark award is 25 percent of the recovery obtained, with 20-30% as the usual range."  *Vizcaino*, 290 F.3d at 1047 (citations and internal quotation marks omitted).  Still, "[s]election of the benchmark or any other rate must be supported by findings that take into account all of the circumstances of the case."  *Id.*  In doing so, "courts look to factors such as: (a) the results achieved; (b) the risk of litigation; (c) the

skill required, (d) the quality of work; (e) the contingent nature of the fee and the financial burden; and (f) the awards made in similar cases." *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 492 (E.D. Cal. 2010) (citing *Vizcaino*, 290 F.3d at 1047).

Here, Plaintiff's counsel requests an award of attorney fees of $725,000, representing 21.64% of the $3.35 million settlement. (Doc. 231-1).[3] This award is warranted for the following reasons. For one, it is appropriate in light of the results achieved and the awards in similar cases. As previously noted, the $3.35 million settlement amount in this case, based upon the expected recovery amount on a per claimant basis, was "consistent with the range of settlements in TCPA class actions." (Doc. 218; *see also* Doc. 215-1). This result, though not exceptional, represents "a good result for class members," and supports the fee award. *See Ellison*, 2013 WL 12124432, at *9 (concluding that a recovery "roughly in the middle" of recoveries in similar class actions was a good, but not exceptional, result which still supported the fee award).

In addition, as noted above, there were several weaknesses in Plaintiff's case. This means there was risk associated with continuing the litigation, and skill required to navigate these risks and obtain a valuable settlement for the class members. Indeed, the Court twice rejected the parties' proposed settlement agreements after concluding they were inadequate. (Doc. 218). Despite this, Plaintiff's counsel pursued the litigation. Moreover, Plaintiff's counsel did so on a contingency basis, expending nearly 900 hours on the case over the course of six years without any guarantee of payment. Each of these factors—the risk involved, the skill required, and the fact that Plaintiff's counsel worked on contingency—supports the fee award. *See Vasquez*, 266 F.R.D. at 492.

Beyond this, the Court also notes that counsel's requested $725,000 attorney's

---

[3] Plaintiff represents that this figure is 23.43% of the settlement fund's value. It appears Plaintiff's counsel is including both the $725,000 in attorney's fees and $59,627 in costs in its estimation, which together represent 23.43% of the $3.35 million settlement fund's value. However, the attorney's fees calculation only considers attorney's fees, not costs. *See, e.g.*, *Vasquez*, 266 F.R.D. at 491. Since the $725,000 for attorney's fees Plaintiff's counsel requests represents approximately 21.64% of the $3.35 million settlement, Plaintiff's counsel request will be evaluated based upon that percentage.

fees are reasonable when compared to the amount Plaintiff's counsel might otherwise receive under the lodestar method.  (Doc. 231-1).  In determining the reasonableness of attorney's fees calculated pursuant to the percentage-of-the-fund method, the Ninth Circuit still encourages district courts to use the lodestar method "as a cross-check."  *See Ellison*, 2013 WL 12124432, at *10.  "Under the lodestar method, the court multiplies the reasonable hours expended by a reasonable hourly rate."  *Id.* at *8 (citation omitted).  From there, the Court may further increase the figure with a "multiplier," to account for factors such as the case's complexity, the risks involved, and whether the case was taken on contingency, "to arrive at a reasonable fee." *Id.* (citation omitted).

Here, as of January 2018 when Plaintiff's counsel submitted their motion for attorney's fees, Plaintiff's counsel had already expended nearly 900 hours on the case, most of which was attorney time.  (Doc. 231-1).  These hours appear reasonable in light of the work completed on the case over the course of several years.  This work included completing discovery, submitting and defending a class certification motion, participating in settlement discussions, and submitting three settlement agreement proposals to this Court.  And for this work, counsel's hourly rates ranged from $300 to $550 an hour, which is reasonable for counsel in Arizona performing similar work.  (Doc. 231-4); *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008) ("Generally, when determining a reasonable hourly rate, the relevant community is the forum in which the district court sits.").  Thus, multiplying the nearly 900 hours Plaintiff's counsel expended on this litigation by their hourly rates, Plaintiff's counsel's bill totaled $413,062.50.  From there, a multiplier of approximately 1.75 would have been justified in light of the complexities and risk associated with this litigation, and the fact that Plaintiff's counsel performed this work on a contingency basis and completed some significant motion practice.  (Doc. 231-1).  *See also Vizcaino*, 290 F.3d at 1051; *Ellison*, 2013 WL 12124432, at *11; *see generally Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), abrogated on other grounds by *City of Burlington v. Dague*, 505 U.S. 557 (1992).  For these reasons, the Court concluded Plaintiff's counsel's attorney's fees were

reasonable and appropriate, and granted this part of Plaintiff's motion.

However, the Court will reduce Plaintiff's request for $59,627 in costs to $23,627. In doing so, the Court notes that, after this Court approved the original notice plan, Plaintiff's counsel failed to provide notice to class members in accordance with it.  (Docs. 232; 235).   The Court then approved a revised notice plan in early 2018 to correct Plaintiff's counsel's oversight.   In doing so, however, this Court explicitly informed Plaintiff's counsel that "any excess costs stemming from these oversights will be borne by counsel," and also explained that the amount set aside to cover the costs of litigation was not to be used to "correct [Plaintiff's counsel's] oversights and engage in duplicative efforts to notify class members."  (Doc. 236).   Despite this, Plaintiff's counsel's request for $59,627 in costs includes a $36,000 expense for providing supplemental notice to class members in January of 2018.   (Docs. 231; 231-5; 254).   As previously stated, Plaintiff's counsel shall bear this cost themselves.

The remaining costs of $23,627, however, appear reasonable.  *See Vasquez*, 266 F.R.D. at 493.   These costs primarily represent travel costs, postage, and other litigation expenses, such as mediation and filing fees incurred in connection with this litigation. (Docs. 231-5; 231-8).   In addition, the costs are below the $100,000 maximum previously agreed-to by the parties and pre-approved by this Court.  (Docs. 215; 218).

Accordingly,

**IT IS ORDERED** Plaintiff's Motion for Final Approval, (Doc. 239), is **GRANTED**.

**IT IS FURTHER ORDERED** Plaintiff's Motion for Attorney's Fees and Costs, (Doc. 231), is **GRANTED IN PART AND DENIED IN PART**.   Plaintiff's counsel shall be awarded attorney's fees in the amount of $725,000 and costs in the amount of $23,627.

Dated this 26th day of July, 2018.

Honorable Roslyn O. Silver
Senior United States District Judge