**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Michael Reid, et al., | No. CV-12-02661-PHX-ROS |
| Plaintiffs, | **ORDER** |
| v. | |
| I.C. System Incorporated, | |
| Defendant. | |

Defendant IC System Inc. has been trying for years to avoid its obligations under the parties' settlement agreement.  All its previous efforts failed but IC System has not given up hope.  Thus, despite the settlement being approved, judgment being entered, and the Ninth Circuit affirming the approval and judgment, IC System now opposes distributing the remaining settlement funds to class members.  Instead, IC System claims it is entitled to recover the approximately $476,000 remaining in the settlement fund.  There is no basis for IC System's position.  Plaintiffs will be authorized to conduct a second distribution to class members and to send the remaining funds, if any, to the *cy pres* recipients they identify.

## BACKGROUND

In 2012, Plaintiffs filed this class action alleging claims under the Telephone Consumer Protection Act.  (Doc. 1).  After conducting discovery, the parties reached a proposed settlement and filed a motion for preliminary approval.  The Court denied preliminary approval because the proposed settlement could have resulted in each class

member recovering only two dollars.  (Doc. 147).  Plaintiffs then filed a motion to certify a class.  (Doc. 175).  Before the Court ruled on that motion, the parties again applied for preliminary approval of a settlement.  (Doc. 195).  The Court expressed additional concerns regarding that second proposed settlement.  (Doc. 200).  The parties then filed a third motion for preliminary approval which included significant changes to the settlement.

Under the parties' third proposed settlement, IC System would pay $3,350,000 to settle all claims.  From that amount, Plaintiffs would deduct administrative costs and attorneys' fees.  After those deductions, the remaining balance would be distributed to class members under a "tiered settlement" structure where "individuals with stronger claims" would receive more than individuals "with weaker claims."  (Doc. 218 at 4).  The settlement provided class members who submitted claims would receive checks and "any amount remaining . . . from uncashed settlement checks" would be distributed to "one or more *cy pres* recipients."  (Doc. 215-3 at 13).  The settlement did not contain a clause forbidding reversion of funds to IC System but the settlement terms meant there was no possibility settlement funds would be returned to IC System.  That is, the entire fund would either go to class members or *cy pres* recipients.  The Court granted preliminary approval of this settlement.  (Doc. 215, 218).

Before the final approval hearing, IC System attempted to withdraw from the settlement by claiming more than 100 class members had indicated an intent to opt-out.  (Doc. 237).  IC System's position prompted extensive briefing, but the Court concluded 100 class members had not, in fact, indicated an intent to opt-out.  Therefore, the Court granted final approval over IC System's objection.  (Doc. 260).  IC System appealed but the Ninth Circuit affirmed.  In rejecting IC System's argument that it was entitled to withdraw from the settlement because 100 class members had opted out, the Ninth Circuit noted IC System's math "simply does not add up."  (Doc. 272-1 at 4).  After the appellate mandate issued the Court approved final distribution of the settlement.  (Doc. 274).

During the claims process, 1,799 class members submitted claims and 1,799 checks were distributed.  (Doc. 275-2 at 2).  Of those initial checks, 354 were not cashed.  That

means there is still $476,606.60 in the settlement fund.  (Doc. 275-2 at 2).  Based on the significant number of uncashed checks, Plaintiffs seek leave to conduct a second distribution to the class members who cashed the initial checks, along with issuance of replacement checks to four class members who were unable to cash their initial checks.  This supplemental distribution would cost $7,221 in administrative fees.  IC System claims no second distribution should occur and it is entitled to the remaining funds.

## ANALYSIS

According to Plaintiffs, "the parties did not contemplate a large sum of residual funds [would be available] for a *cy pres* distribution."  (Doc. 275-1 at 8).  IC System does not dispute this point and the structure of the settlement agreement shows a sizable *cy pres* award was not anticipated.  The size of each settlement check was calculated as a pro rata share of the settlement fund.  It is surprising that 354 class members made claims, checks were sent to them, but they failed to cash the checks.  The present situation is not something the parties, or the Court, expected.  Hoping to take advantage of this development, IC System argues it is entitled to the remaining funds.

According to IC System, there is "a threshold issue" of "whether the Court procedurally can entertain Plaintiff's Motion without properly re-opening this matter first."  (Doc. 279 at 4).  Beyond that "threshold issue," IC System argues subsequent legal rulings established Plaintiffs never had any valid TCPA claims.  (Doc. 279 at 5).  Thus, IC System argues the Plaintiffs lacked "standing" to assert TCPA claims and this case is now "moot."  (Doc. 279 at 6).  Based on these alleged procedural and jurisdictional issues, IC System argues the only just result is for it to recover the remaining $476,606.60.[1]

IC System's first argument is that the Court may have to reopen the case to determine how to distribute the remaining funds.  IC System cites no authority supporting this position and there is no obvious reason why the Court would need to formally vacate the judgment to authorize additional distributions.  There is no need to reopen this case.

Next, IC system argues legal rulings issued years after the final judgment in this

---

[1] IC System concedes any "attempt to recover almost $2,000,000 in funds that have already been deposited would not be logistically or economically feasible."  (Doc. 279 at 2).

matter establish this case is "moot" or that Plaintiffs lack "standing." Again, IC System does not cite any authority supporting these positions. It is strange to argue a long-closed case has become "moot" based on developments years after final judgment. If a closed case could become "moot" based on events years later, no judgment would ever be immune from subsequent attack based on later legal or factual developments. That is not how litigation works.[2]

While IC System offers these baseless jurisdictional arguments as somehow supporting its request for the return of funds, it does not offer any arguments tied to the text of the settlement agreement. And that text makes clear the return of money to IC System is not possible. The settlement agreement contemplated the distribution of funds to class members and any residual funds would be sent to *cy pres* recipients. Pursuant to the settlement's terms, there simply is no possibility of funds reverting to IC System. In fact, if the settlement agreement had contained a reversionary clause, it likely would not have been approved. *See, e.g.*, *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011) (noting reversion of funds to defendant is sign of possible collusion). Because IC System has not cited any authority that would allow the Court to impose a reversionary clause where none exists, the funds cannot go back to IC System. The only remaining question is whether the Court should authorize a second distribution or if some other action is appropriate.

The settlement agreement does not explicitly contemplate a second distribution to class members. Instead, the settlement agreement authorizes an initial distribution and then a *cy pres* distribution of any remaining funds. Other district courts in the Ninth Circuit have concluded circumstances such as the present allow for an additional distribution to class members, even if the settlement agreement does not explicitly provide for such.[3] *See*

---

[2] There are situations where subsequent developments can result in the vacatur of a district court judgment. For example, a district court judgment that is rendered moot by developments during appellate proceedings may be vacated. *See, e.g.*, *Alvarez v. Smith*, 558 U.S. 87, 94 (2009) (discussing vacatur on appeal based on mootness because of "happenstance" or "settlement"). But here, appellate proceedings ended long ago. In addition, Federal Rule of Civil Procedure 60(b) provides a mechanism for vacating a prior judgment based on enumerated grounds. IC System does not invoke Rule 60.

[3] Courts outside the Ninth Circuit have adopted conflicting approaches. *Compare*

1   *Connor v. JPMorgan Chase Bank, N.A.*, No. 3:10-CV-1284-GPC-BGS, 2021 WL
2   1238862, at *2 (S.D. Cal. Apr. 2, 2021) ("[A] second distribution to class members, where
3   possible and not contrary to the aims of the settlement agreement, is often preferable to a
4   *cy pres* distribution."); *Hester v. Vision Airlines, Inc.*, No. 2:09-CV-00117-RLH, 2017 WL
5   4227928, at *2 (D. Nev. Sept. 22, 2017) (holding when it is "logistically feasible and
6   economically viable to make additional pro rata distributions to class members, the district
7   court should do so"). That approach is consistent with the Ninth Circuit's strong preference
8   for distribution to class members instead of *cy pres* distributions. *See Nachshin v. AOL,*
9   *LLC*, 663 F.3d 1034, 1039 (9th Cir. 2011) (noting *cy pres* distribution "may answer to the
10  whims and self interests of the parties, their counsel, or the court").

11          The Court will follow the lead of other district courts and allow for a second
12  distribution to class members. The Court will also permit an additional distribution to those
13  class members who were unable to cash their original checks through no fault of their own.
14  In the event any funds remain after these additional distributions, *cy pres* distributions may
15  be made to the National Consumer Law Center and New Media Rights. Those
16  organizations are devoted to consumer rights and to educating consumers regarding their
17  rights and applicable laws, matters directly related to the TCPA claims at issue in this case.

18          Accordingly,

19          **IT IS ORDERED** the Motion for Second Distribution (Doc. 275) is **GRANTED**.
20  The residual settlement funds shall be distributed as follows:

21  - Checks shall be reissued to each of the four Class Members (Georgios
22    Giannakoplulos, Robyn Henry, Christopher McKenzie, and Joanne Russell) as well
23    as any class member that makes a request prior to the second distribution of the
24    settlement fund.

25  - A second distribution shall be made from the settlement fund to those class members
26    that cashed their initial settlement check.

27  *Keepseagle v. Vilsack*, 118 F. Supp. 3d 98, 122 (D.D.C. 2015) (rejecting request for
    additional distribution because settlement agreement did not provide for such distribution)
28  *with In re BankAmerica Corp. Sec. Litig.*, 775 F.3d 1060, 1067 (8th Cir. 2015) (requiring
    "additional distribution to the class").

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- The costs associated with the second distribution shall be paid from the settlement fund prior to the distribution.
- The remainder of settlement funds after the second distribution shall be split equally between National Consumer Law Center and New Media Rights.

Dated this 2nd day of September, 2021.

Honorable Roslyn O. Silver
Senior United States District Judge